## MERTON J. BELL v. COMMISSIONER OF TAXATION.

188 N. W. (2d) 827.

July 2, 1971—No. 42646.

*Fremont Fletcher* and *Thompson, Hessian, Fletcher & McKasy,* for relator.

*Warren Spannaus,* Attorney General, and *William F. Skewes,* Special Assistant Attorney General, for respondent.

Heard before Knutson, C. J., and Nelson, Otis, Peterson, and Kelly, JJ.

PETERSON, JUSTICE.

Writ of certiorari on the relation of Merton J. Bell to review a Tax Court decision affirming the commissioner of taxation's order assessing additional gift taxes against Bell for 1964, 1965, and 1966.

Taxpayer contests the commissioner of taxation's authority to make a second valuation of a gift of stock in a closely held corporation for state gift tax purposes based solely upon a different valuation by the Internal Revenue Service made subsequent to the commissioner's audit and valuation, where the tax-

payer had accepted and paid the increased tax resulting from the commissioner's first valuation.

The facts are undisputed. Taxpayer filed timely Minnesota gift tax returns for 1961 to 1966, reporting gifts of common stock of Bell Lumber & Pole Company, valued by taxpayer at $100 per share, to his two sons and to his wife, and forwarding with each return the appropriate payment of gift tax based on that valuation. With the returns for 1964, 1965, and 1966, taxpayer filed a recent balance sheet showing assets and liabilities of Bell Lumber & Pole Company and a statement of income and earned surplus for recent years.

In April 1967 the commissioner informed taxpayer that he proposed to revalue the gifted stock for the years 1963, 1964, and 1965, changing the reported $100 per share to $152.09 for 1963, $167.68 for 1964, and $186.37 for 1965. The commissioner obtained these values by applying a formula which he normally used in valuing such gifts. Taxpayer accepted the increased valuation. On May 1, 1967, the commissioner ordered taxpayer to pay a total gift tax deficiency of $494.74 for 1963, 1964, and 1965 based on the increased valuation. Taxpayer paid this deficiency.

In a subsequent Federal audit, the Internal Revenue Service made changes in the valuations of the gifted stock for Federal gift tax purposes for 1961 to 1966. Taxpayer thereafter duly notified the commissioner of taxation that the Internal Revenue Service had audited his Federal gift tax returns and that he had paid the deficiency, but stated that he did not intend to file an amended state return.

On March 18, 1968, the commissioner of taxation revalued the gifts for 1964, 1965, and 1966 solely on the basis of the Internal Revenue Service's valuation and ordered taxpayer to pay additional gift taxes totaling $3,340.01.

Taxpayer does not contest the accuracy of the valuations, but does challenge the existence of statutory authority for the commissioner to issue two orders relating to the same gift. Taxpayer

does not object to the commissioner's revaluation and reassessment for 1966, since the 1966 gifts were not covered by the May 1, 1967, order.

Taxpayer, with considerable force, contends that the statute does not expressly confer authority upon the commissioner to modify his initial valuation and to reassess the tax merely because the Internal Revenue Service, upon its own subsequent audit of the taxpayer's Federal return, has made a different valuation. This is not, as the taxpayer notes, a case of either a false or fraudulent return, with the intent to evade tax, or an omission of gifted property from the return, a situation expressly covered by Minn. St. 292.08, subd. 7(a, b). Although § 292.08, subd. 7(d), requires the taxpayer to report to the commissioner any corrected value made by the Internal Revenue Service, taxpayer contends that, unlike paragraphs (a) and (b), it does not constitute an exception to the revaluation authority conferred by § 292.08, subd. 6. The notice requirement, in his view, is intended only to notify the commissioner in the event the commissioner has not yet made his own audit and independent valuation. The legislature, he concludes, not only failed to grant the additional assessment authority exercised in this case, but effectively expressed an intent that the commissioner was not to have that authority.

We are persuaded that a reasonable construction of the statute does not deny the contested authority to the commissioner. We impute to the legislature the knowledge that the commissioner has no means of knowing whether the Internal Revenue Service will audit a particular gift tax return and that the commissioner, in the competent discharge of his responsibilities, must proceed to audit returns without waiting for action by the Internal Revenue Service. In view of the practical necessity for proceeding without awaiting action by the Internal Revenue Service, a reading of the notice provisions of subd. 7(d) as authorizing the commissioner to act upon that notice only if he has not previously audited the taxpayer's return would, in the case of undervalued

gift property, be of minimal utility. We think it must be given a practical construction that will effectuate the legislature's basic intent that a gift tax be computed on the "full and true value" of the gift. § 292.03, subd. 1.

The statute must, at the same time, be administered with fairness to a taxpayer. There are adequate safeguards, both express and implied, against harassment of a taxpayer by the commissioner. If the statute of limitations had run, the commissioner would not have been authorized to make the contested second valuation, for it was not predicated upon the provisions of § 292.08, subd. 7 (a, b). On the other hand, if the subsequent audit by the Internal Revenue Service had disclosed that the first valuation of the gift was excessive, the taxpayer, as the commissioner concedes, would have had the right to ask for a second valuation, as the basis for a refund pursuant to § 292.12, subd. 1. A bona fide settlement between the taxpayer and the commissioner upon a contested valuation would doubtless foreclose a second valuation by the commissioner, regardless of the subsequent valuation made by the Internal Revenue Service in this case; but the mere fact that taxpayer accepted the first valuation without protest and paid the tax as thus reassessed is not such a settlement.

Taxpayer did not undertake to establish that he was prejudiced by the action of the commissioner, and we conclude that the commissioner did not act arbitrarily and capriciously in making the second valuation and the reassessment of gift tax.

Affirmed.